# EXHIBIT N

Rhode Island State Police Headquarters
NARRATIVE FOR TROOPER G.THOMAS CHABOT JR
Ref: 06RIK3-584-OF

On July 11, 2006 at approximately 6:30 AM, Trooper T.Chabot was set up on a fixed radar post in the grassy median on Route 95 in the area of exit 4 in the Town of Richmond. Trooper observed a Grey passenger van traveling on Route 95 south approach his location in the first lane of travel and change lanes into the second lane of travel without the use of it's turn signal. Trooper exited his post, activated his lights and stopped the van on Route 95 south approximately 1/4 mile south of exit 4.

Trooper Chabot approached the van bearing RI registration PJ-634, and spoke with the male operator requesting his license and registration. The operator presented his Rhode Island license stating that his name was **Carlos Tamup (DOB: 07/15/70) of 118 Cleveland Street Providence, RI**. The registration stated that the van was a 2001 Dodge, actively registered to a Juana E. Noriega, of the same Cleveland Street address.

While TAMUP was gathering his information, Trooper Chabot observed that the van contained 14 passengers (including the operator) consisting of 11 male subjects and 3 female subjects, all appearing to be of the Hispanic decent. Trooper then requested if TAMUP would gather identification from all the passengers. Due to the large size of the van and difficulty communicating (language barrier) with TAMUP and the passengers, Trooper went around the vehicle to the passenger side and opened one of the double doors. He then requested again from the passengers if they had any form of identification. The passengers remained still and did not say a word. Trooper had TAMUP exit the vehicle as to assist with this language barrier. As he exited the vehicle, a Terry Pat was conducted for weapons with negative results.

Trooper inquired from TAMUP where he was going, and again, due to the language barrier it was difficult to understand his broken English, however he was able to state the he was enroute to Westerly. Trooper inquired where in Westerly but Trooper Chabot was unable to understand what TAMUP had said. Trooper inquired what the passengers were doing and TAMUP advised that they were going to work to polish jewelry.

Trooper Chabot requested if TAMUP would attempt to obtain any identification cards from his passengers. Speaking in his native tongue (Spanish) to his passengers, TAMUP was able to obtain 2 Guatemalan identification cards and a Sports Fitness ID card with no date of birth on it. Trooper then asked TAMUP if any of them had Immigration credentials proving their US Citizenship. TAMUP asked the passengers and he stated that none had any such papers. TAMUP was then seated back in the vehicle.

Trooper Chabot then responded back to his cruiser and checked TAMUP to learn that he was negative NCIC and local files and that his license #2217273 was active.

Due to the lack of credentials, Trooper contacted US Immigration and Customs Enforcement office in Vermont by use of his cell phone. It was explained to their agent that he was currently on a motor vehicle stop with what appeared to be numerous illegal immigrants in a work van heading to their place of employment in Westerly RI. That agent then stated that he would contact the Rhode Island Office and that they would get back in touch within the next 3 minutes.

Approximately 3 minutes later, agent Cort Burke, of the RI Office of US Immigration and Customs Enforcement, located at 200 Dyer Ave. Providence, contacted this writer. Agent Burke was advised of the motor vehicle stop and asked if their agency would be interested in the occupants of the vehicle. Agent Burke stated that due to the lack of identification and strong possibility that the occupants were illegal immigrants their office would identify all parties to learn there status. Agent Burke went on that if the occupants were willing to respond

to his office, they would process them accordingly. Trooper then stated that he would speak with TAMUP and contact agent Burke to advise.

Trooper Chabot approached the vehicle and requested TAMUP exit the vehicle. Again, he was patted down for officer safety with negative results for any weapons. Trooper Chabot explained the situation to TAMUP advising that due to the lack of identification of his passengers, the US Immigration office requested if they would respond to the Providence Office to be processed in order to determine their citizenship. TAMUP stated to Trooper Chabot that he was not familiar with the location in Providence. Trooper attempted to explain to TAMUP how to get to 200 Dyer Avenue Providence, however due to the language barrier TAMUP was unable to understand. Due to this language barrier Trooper Chabot offered to escort them to the Dyer Avenue address on his way to an RITT trial. TAMUP spoke with his passengers and agreed.

Trooper then contacted agent Burke and advised that the van was responding to their office for processing. Agent Burke stated that he would be standing by for their arrival. At approximately 7:40 AM, Troopers T.Chabot and Donahue escorted the van to the Dyer Avenue location. At approximately 8:20 AM, Troopers were greeted by resident agent in charge, David P.Riccio and agent Burke. Agent Riccio went and spoke with TAMUP and his occupants. All parties were advised of the proceedings and each of them exited the van on their own and entered the US Immigration and Customs Enforcement facility on their own free will without incident.

Agent Riccio then stated that they would all be processed to determine their citizenship and that a report would be ready by 12:00 PM that same day. Trooper Chabot then had TAMUP sign an RITT $75.00 pay by mail summons #05001071642 for 31-16-5, Turn Signal Required. At approximately 8:35 AM, Troopers cleared the address without incident enroute to Rhode Island Traffic Tribunal.

**July 12, Trooper T.Chabot:** On this day at approximately 11:30 AM, Trooper Chabot contacted agent Riccio requesting the status of the subjects and if the reports were ready. Agent Riccio stated that they were completed and that all 14 passengers, including the licensed operator, Carlos TAMUP were illegal foreign nationals (*see attached 14 ICE reports*). Riccio stated that they were processed on an administrative charge - non criminal, and that all were released to appear in court at the Boston Immigration office at later date to be determined (approximately 6 months). On the court date assigned, the judge will make determination on deportation.

**July 17, Trooper T.Chabot:** On this date by means of interdepartmental mail, Trooper Chabot received the original copies from Immigration and Customs Enforcement's of the Record of Deportable / Excludable Alien reports (see attached).

Please see the below transcribed narrative portion in respect to the operator of the van, Carlos Tamup (DOB: 07/15/70):

***"Subject was determined to be a citizen and national of Guatemala illegally present in the United States. Subject admitted that he last entered the United States without first being inspected by a United States Immigration Officer. Subject admitted that he never possessed any type of immigration document that allowed him to pass through, work or reside in the United States. Subject has no application or petitions pending on his behalf for any type of immigration benefit. Subject makes no claims to US citizenship or military service."***

"ICE" officials also determined that TAMUP must have obtained his RI operator's license #2217273 prior to the State Law requiring individuals who apply for a license, provide a Social Security number. This license

Rhode Island State Police Headquarters

NARRATIVE FOR TROOPER G.THOMAS CHABOT JR

Ref: 06RIK3-584-OF

was obtained by the use of a tax identification number.

NOTHING FURTHER TO BE DONE