**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **ASTRID G. ESTRADA, et al.**, | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **C.A. No.:07-10ML** |
| | : | |
| **STATE OF RHODE ISLAND**, **et al.**, | : | |
| **Defendants** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. INTRODUCTION

This action is brought by the Plaintiffs seeking relief for injuries suffered as a result of acts and/or omissions committed by Defendants in violation of 42 U.S.C. §1981, the Fourth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. §1983, Article I, §2 of the Rhode Island Constitution, Article I, §6 of the Rhode Island Constitution, the Racial Profiling Prevention Act of 2004, R.I.G.L. §31-21.2-1, *et seq*., and common law.

The Plaintiffs have filed the within motion pursuant to Fed. R. Civ. P. 56 seeking partial summary judgment against the Defendants as to liability on Count II (Unreasonable Search and Seizure in Violation of 42 U.S.C. §1983) and Count VI (Unreasonable Search and Seizure in Violation of Article I, §6 of the Rhode Island Constitution) of the Complaint.

## II. MATERIAL FACTS

*See* Plaintiffs' Statement of Undisputed Facts.

## III. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Grubb v. KMS Patriots, L.P.*, 88 F.3d 1, 3 (1st Cir. 1996); *see also*, *Kelly v. United States*, 924 F.2d 355, 357 (1st Cir. 1991); Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, a court is obliged to view the facts in a light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor. *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 534 (1st Cir. 1996); *National Credit Union Admin. Bd. v. Regine*, 795 F. Supp. 39, 62 (D.R.I. 1992). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Moreover, summary judgment is appropriate where "the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation." *Woods v. Friction Materials, Inc.*, 30 F.3d 255, 259 (1st Cir. 1994) (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990)). As expressly provided in the language of Rule 56, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) (emphasis added)). Accordingly, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial." *Id.* The availability of summary judgment thus turns upon whether a proper jury question is presented. *Anderson*, 477 U.S. at 249. A court may grant summary judgment on less than all claims or issues or with respect to liability only. *See* Fed. R. Civ. P. 56(c) and (d).

## IV. ARGUMENT

### A. No Genuine Issues of Material Fact Exist To Justify Either *Terry* Patdown of Plaintiff Tamup.

Defendant Chabot has not and cannot point to specific and articulable facts to justify the *Terry* frisks or patdowns of Plaintiff Tamup. Defendant Chabot's inability to refer to any facts to support actual suspicion that Plaintiff Tamup possessed a weapon establishes that he violated Plaintiff Tamup's rights under the Fourth Amendment and Article I, §6 of the Rhode Island Constitution.

Courts have consistently held that, while engaging in legitimate investigative conduct, "the police may take reasonable steps to protect themselves by searching a suspect for weapons or taking other protective measures." *United States v. Taylor*, 162 F.3d 12, 17 (1st Cir.1998) *citing Terry v. Ohio*, 392 U.S. 1, 21 (1968); *see also U.S. v. Sandoval-Espana*, 459 F.Supp.2d 121 (D.R.I. 2006). In doing so, "[t]he officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or the safety of others was in danger." *Terry*, 392 at 27. Although courts utilize an objective, reasonableness test to determine the validity of an officer's frisk for weapons, courts do not "permit[] a frisk where, although the circumstances might pass an objective test, the officers in the field were not *actually* concerned for their safety." *U.S. v. Lott*, 870 F.2d 778, 783-784 (1st Cir. 1989). Accordingly, a police officer must have "an actual suspicion that weapons are present before a *Terry* search." *Id.* at 784; *U.S. v. Roggeman*, 279 F.3d 573 (8th Cir. 2002)(police officer must have an articuable suspicion, based upon his training, knowledge, and evaluation of the circumstances, that an individual possesses a weapon prior to a frisk).

**Initial Terry Patdown**

In the case at bar, Defendant Chabot frisked Plaintiff Tamup twice. The first patdown occurred after Defendant Chabot requested identification from Plaintiff Tamup. Chabot Depo.,

Exhibit C., at p. 23, lines 3-7. During his deposition, Defendant Chabot subsequently justified this initial search by stating that he was in fear of his safety. Chabot Depo. at p. 23, lines 8-11.

A reasonable officer presented with the same circumstances that Defendant Chabot confronted would not have believed that his welfare was in jeopardy. First, Defendant Chabot never observed Plaintiff Tamup make any remarkable, sudden, or threatening movements while he was seated in the van. In fact, while Defendant Chabot was standing at or about the driver's side door of the van, the only movement that Defendant Chabot observed Plaintiff Tamup make was to reach in the direction of his glove compartment, and thereafter, the presentation of his license and registration. Chabot Depo. at p. 15, lines 6-7, 19-22. Second, Plaintiff Tamup did not interact with the other van passengers in a manner that would lead a reasonable police officer to fear for his safety. Other than translating questions for Defendant Chabot, Defendant Chabot neither stated in his deposition testimony nor in his police narrative report ("Report") that Plaintiff Tamup had any verbal or physical interaction with the other passengers in the van. (A copy of the Report is attached hereto at Exhibit E.) In fact, Defendant Chabot did acknowledge that, prior to the patdown of Plaintiff Tamup, the passengers "remained still and did not say a word." Report at pg. 1; *see also* Chabot Depo. at p. 24, lines 11-16. Third, Defendant Chabot admitted at his deposition that he did not observe "**anything unusual**" from the time Plaintiff Tamup exited the van and walked from the driver's side to the passenger's side of the van to the time he commenced the *Terry* patdown. Chabot Depo. at pgs. 15, lines 5-10; 24, lines 4-7; *see also* Tamup Depo., Exhibit D, at p. 29, lines 2-5.[1] Finally, Defendant Chabot

[1] Defendant Chabot testified that he feared for his safety, and therefore, conducted the *Terry* patdown. According to Chabot, the patdown was justified due to the existence of 14 people in the van and because Plaintiff Tamup "might have brought" a weapon with him from the van upon exiting same. Chabot Depo. at p. 23, lines 8-11. This assertion lacks merit because, as stated above, Defendant Chabot did not witness any "unusual" movements in the van by any passengers, including Plaintiff Tamup, or while Plaintiff Tamup walked around the motor vehicle. Chabot Depo. at p. 15, lines 5-10; p. 24, lines 4-7, 11-16; *see also* Tamup Depo. at p. 29, lines 2-23.

did not state in his Report or during his deposition that Plaintiff Tamup appeared to be in possession of a weapon, *see Pennsylvania v. Mimms*, 434 U.S. 106 (1977)(*per curiam*)(officer performed *Terry* frisk fearing that bulge might be a weapon), *see also United States v. Trullo*, 809 F.2d 108 (1st Cir. 1987)(bulge in suspect's pocket permitted frisk), or was engaged in suspicious or criminal activity that would suggest he would be carrying a weapon.[2] *See Trullo*, 809 F.2d 108 (*Terry* patdown permissible where officer had suspicion that the suspect was engaged in an illegal transaction, quite possibly a drug sale).

Based on the facts and circumstances surrounding the initial frisk of Plaintiff Tamup as described by Defendant Chabot, a reasonable and prudent officer presented with the same facts and circumstances would not be warranted in believing that his personal welfare was in jeopardy. *Terry*, 392 at 27. Indeed, Defendant Chabot never articulated, either in his Report or in his deposition testimony, that he had an "actual suspicion" that Plaintiff Tamup possessed a weapon or articulated any facts to support such a suspicion. *Lott*, 870 F.2d at 784. Accordingly, the initial *Terry* patdown of Plaintiff Tamup was in violation of the Fourth Amendment and Article I, §6 of the Rhode Island Constitution.

**Second Terry Patdown**

Following the initial *Terry* patdown of Plaintiff Tamup, Defendant Chabot permitted him to return to the driver's seat of the van while Defendant Chabot returned to his police cruiser and conducted a criminal check of Plaintiff Tamup and contacted the Office of Immigration and Customs Enforcement ("ICE"). Chabot Depo. at p. 25, lines 1-8; p. 26, lines 3-15; p. 27, lines 9-16. Upon his return to the van, Defendant Chabot requested that Plaintiff Tamup exit the van a second time. *Id*. at 27, lines 17-22. At that point, Defendant Chabot conducted another *Terry*

[2] Plaintiff Tamup merely informed Defendant Chabot that he and the other Plaintiffs were traveling to work in Westerly, Rhode Island. Chabot Depo. at p. 17, lines 23-25; p. 18, lines 1-6.

patdown of Plaintiff Tamup. *Id*. at 27, lines 20-22. Defendant Chabot justified the second patdown by stating that he believed Plaintiff Tamup "**could have** picked up a weapon while he got back in his vehicle." *Id.* at 28, lines 3-6.

The second *Terry* patdown of Plaintiff Tamup was also unlawful. Defendant Chabot did not witness Plaintiff Tamup engage in any unusual or threatening acts between the first and second patdown. *Id.* at 28, lines 7-10. In addition, Defendant Chabot's *ex post facto* justification for the second patdown—Plaintiff Tamup "**could have**" grabbed a weapon in the van—is illogical and not supported by articulable facts. If Defendant Chabot did, in fact, have a concern that Plaintiff Tamup could access a weapon inside the van, he should have searched the van, the van's compartment, and the other passengers **prior** to permitting Plaintiff Tamup to return to the vehicle. He elected not to conduct these searches despite having had the opportunity to do so.

As stated above, a reasonable officer in Defendant Chabot's position would not have believed his safety was in danger and would not have conducted the second patdown. Furthermore, the fact that Defendant Chabot did not look for weapons in the van before permitting Plaintiff Tamup to return to the vehicle demonstrates he did not have "actual suspicion" that Plaintiff Tamup had a weapon, nor any facts to support such an assertion.

Viewing all facts in the light most favorable to the Defendants, it is plainly evident that no material factual issues exist justifying either of the *Terry* patdowns of Plaintiff Tamup and therefore his Motion should be granted as to Counts II and VI.

### B. Material Factual Issues Do Not Exist To Justify The Seizure Of The Plaintiffs.

By failing to allow the Plaintiffs leave the scene and requiring them to follow him and Trooper Donahue to ICE, Defendant Chabot effectuated a seizure of the Plaintiffs. The

Plaintiffs maintain that the undisputed facts of this case unequivocally establish that this seizure was unreasonable, unlawful and in violation of their constitutional rights.

The Fourth Amendment "guarantees…every person's right to be free from unreasonable searches and seizures." *Id.*; *see Payton v. New York*, 445 U.S. 573, 585 (1980). A Fourth Amendment seizure occurs when "there is a governmental termination of freedom of movement through means intentionally applied." *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989). Stated differently, "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Terry*, 392 U.S. at 16. A police escort of another motor vehicle can constitute a "seizure" under the Fourth Amendment. *United States v. Petty*, 601 F.2d 883 (5th Cir. 1979)(stating a seizure occurred where border patrol vehicles escorted defendants' vehicle to a border patrol office); *see also U.S. v. Charley*, 396 F.3d 1074 (9th Cir. 2005). A defendant state actor violates the Fourth Amendment and is liable under §1983 only if the particular seizure was "objectively unreasonable." *Graham v. Connor*, 490 U.S. 386, 394 (1989); *see Maiorana v. MacDonald*, 596 F.2d 1072 (1st Cir. 1979).

While the Plaintiffs do not dispute that Defendant Chabot had objective justification or "reasonable suspicion" to conduct the initial motor vehicle stop based on Plaintiff Tamup's neglect in using a turn signal, they maintain that he did not possess "reasonable suspicion" to seize the Plaintiffs and transport them to ICE and that therefore this seizure was unreasonable and in violation of the Fourth Amendment and state constitution.

Defendant Chabot told the Plaintiffs, via Plaintiff Tamup's translation, that they were being escorted to the ICE office in Providence, Rhode Island.[3] Tamup Depo. at p. 22, lines 7-12. Defendant Chabot and Trooper Donahue then escorted the van to ICE with Defendant Chabot

[3] Defendant Chabot testified that he could not specifically recall whether the Plaintiffs agreed to voluntarily travel to ICE. Chabot Depo. at p. 31, lines 14-24.

driving his police cruiser in front of the van and Trooper Donahue operating her cruiser behind the van. Chabot Depo. at p. 33, lines 6-14. At no time during the stop or prior to escorting the van to ICE did Defendant Chabot indicate to the Plaintiffs that they were free to leave the scene. Based on the foregoing, it is clear the Plaintiffs were seized within the context of the Fourth Amendment.

In evaluating the existence of reasonable suspicion, courts consider the totality of the circumstances in examining whether a police officer had a minimal level of objective justification, something more than "an unparticularized suspicion or hunch." *Terry*, 392 U.S. at 27; *see U.S. v. Sandoval-Espana*, 459 F.Supp.2d 121, 131 (D.R.I. 2006)(emphasis added). In the present case, Defendant Chabot did not possess any information that would indicate that the Plaintiffs were illegal immigrants. While the Plaintiffs were Hispanic, could not speak English clearly, and many of them did not have forms of identification or proof of U.S. citizenship, none of the Plaintiffs indicated to Defendant Chabot that they were in the U.S. illegally. Nonetheless, Defendant Chabot seized the Plaintiffs and escorted them to ICE because he had a "hunch" that they were illegal immigrants. Chabot Depo. at p. 22, lines 4-15; p. 26, lines 10-12; p. 28, lines 11-12. Indeed, at least four (4) times during his deposition, Defendant Chabot admitted that he had a "hunch" that the Plaintiffs were illegal immigrants. *Id.* at p. 22, lines 4-15; p. 26, lines 10-12. Moreover, Defendant Chabot stated that he contacted ICE because he "was acting on a hunch." *Id.* at p. 28, lines 11-12.

Defendant Chabot has not and cannot proffer any reasons—other than a "hunch"—to justify Plaintiffs' seizure. Defendant Chabot's justification for the Plaintiffs' seizure fails to meet the requisite threshold permitting a lawful seizure pursuant to the Fourth Amendment. *Terry*, 392 U.S. at 27; *Sandoval-Espana*, 459 F.Supp.2d at 131. Because no material factual

issues exist as to whether Defendant Chabot's actions were supported by reasonable suspicion, Plaintiffs' Motion must be granted as to Counts II and VI.

**C. <u>Defendants State And Pare Failed To Properly Train, Instruct, And/Or Supervise Defendant Chabot.</u>**

The Plaintiffs' are entitled to judgment as a matter of law relative to their federal and state law claims for failure to train or supervise.

In order to establish a claim under §1983 for failure to adequately train police officers, a plaintiff must prove: (1) that the training program at issue is inadequate to the tasks that officers must perform; (2) that the inadequacy is the result of deliberate indifference; and, (3) that the inadequacy is "closely related to" or "actually caused" the plaintiff's injury. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989). Furthermore, a training program must be adequate in both content and duration. *See Russo v. City of Cincinnati*, 935 F.2d 1036, 1047 (6th Cir. 1992)("…we find the fact that the City offered a seven hour course entitled 'Disturbed-Distress Persons' insufficient in and of itself to shield the City from liability").

In the present case, evidence exists establishing that Defendants State and Pare were deficient in properly training troopers relative to *Terry* patdowns and seizures of individuals and that this lack of training caused a violation of Plaintiffs' constitutionally protected rights.

***Terry* Patdowns of Plaintiff Tamup**

During his deposition, Defendant Chabot acknowledged that he had received training relative to *Terry* stops and patdowns prior to the incident at issue. Chabot Depo. at p. 5, lines 20-25; p. 6, lines 1-3, 9-10. Nonetheless, despite this training, Defendant Chabot still conducted an unlawful *Terry* patdown. The Plaintiffs maintain that deficiencies in Defendant Chabot's training caused him to conduct the unlawful search.

Defendant Chabot was trained that the grounds for conducting a *Terry* patdown are "officer safety." *Id.* at. 6, lines 21-23. He also believes that *Terry* patdowns are justified to "make sure" officers are "safe" or if there is "any type of movements within a vehicle," and that the searches are done for "weapons." *Id.* at 7, lines 2-18. Based on Defendant Chabot's understanding of the grounds for a *Terry* search, it is plainly apparent that Defendants State and Pare exhibited deliberate indifference relative to training as to a common task conducted by troopers and that this indifference resulted in the violation of Plaintiff Tamup's constitutional rights.

**Seizure of Plaintiffs**

Defendant Chabot stated that he was aware of at least one (1) other motor vehicle stop by a trooper that was "extremely" similar to the subject incident. *Id*. at p. 29, lines 8-12. According to Defendant Chabot, during the previous incident, "a van was stopped, apparent paperwork could not be produced and that trooper decided to call ICE." *Id*. at p. 29, lines 10-12. Based on Chabot's testimony, a custom or policy existed within the State Police Department that, during vehicle stops, minorities, who could not produce proper forms of identification, were unlawfully seized and referred to ICE. Accordingly, Defendants State and Pare were aware or should have been aware that State troopers were seizing and referring purported illegal immigrants to ICE without the requisite cause insofar as it previously occurred. Defendants State and Pare, however, failed to adequately train troopers relative to investigatory stops, searches or arrests of purported illegal immigrants. As a result, having not been properly trained, Defendant Chabot conducted a similar unlawful seizure. *Young v. City of Providence*, 404 F.3d 4 (1st Cir. 2005); *Allen v. Muskogee, Oklahoma*, 119 F.3d 837, 842 (10th Cir. 1997)("evidence of a single violation of federal rights, accompanied by a showing that a

municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, is sufficient to trigger municipal liability")(emphasis added); *Morrison v. Board of Trustees of Green Tp.*, 529 F.Supp.2d 807, 823 (S.D.Ohio 2007)("A failure to train amounts to 'deliberate indifference' where state actors should have known, either because of a history of [constitutional rights] violations or because such likelihood was obvious, that [constitutional rights] violations were likely to result absent better training."); *Saleh v. City of New York*, 2007 WL 4437167, *9-10 (December 17, 2007 S.D.N.Y.,2007)("a history of employees mishandling the situation" may demonstrate that a municipality was deliberately indifferent in training its officers). Thus, due to Defendants State and Pare's deliberate indifference in failing to adequately train Defendant Chabot, the Plaintiffs' constitutional rights were violated.

Due to the lack of a material factual dispute as to the failure to train claims, Plaintiffs' Motion as to these claims should be granted.

## VI. CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Plaintiffs respectfully pray that this Court grant partial summary judgment in favor of the Plaintiffs and against the Defendants as to liability on Counts II and VI of the Complaint.

Plaintiffs,
By their Attorneys,

/s/ V. Edward Formisano

V. Edward Formisano (#5512)
**American Civil Liberties Union,**
**Rhode Island Affiliate**
Sinapi, Formisano & Co., Ltd.
100 Midway Place, Suite 1
Cranston, RI 02920-5707
(401)944-9690
(401)943-9040 (facsimile)

**CERTIFICATION**

TO: Brenda D. Baum, Assistant Attorney General
Department of Attorney General
150 South Main Street
Providence, RI 02903

I hereby certify that the within document has been electronically filed with the Court on this 22nd day of May, 2008 and is available for viewing and downloading from the ECF system and was sent by electronic mail to the above-referenced.

/s/ V. Edward Formisano