**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **ASTRID G. ESTRADA, et al.**, | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **C.A. No.:07-10ML** |
| | : | |
| **STATE OF RHODE ISLAND, et al.**, | : | |
| **Defendants** | : | |

**PLAINTIFFS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Now come the Plaintiffs, pursuant to LR. CV. 56(a)(1) as amended by Order Misc. No. 7673, and hereby submit a statement of undisputed facts in support of their motion for partial summary judgment against the Defendants in this matter.

**Parties**

1. The Plaintiffs are all Hispanic, and, at all relevant times, resided in the City of Providence. Plaintiffs' Complaint ("Complaint") at ¶¶1-13 and 20. [A copy of the Complaint is attached hereto at Exhibit A.]

2. Defendant State of Rhode Island ("State") is sued on the basis of official acts and/or omissions committed by employees and agents of the Rhode Island State Police, a department created pursuant to R.I.G.L. §42-28-1, et seq. ("Department"), within the executive branch of state government, which said State is a sovereign state of the United States. *Id*. at ¶14.

3. At all relevant times, Defendant Pare ("Pare") was the Superintendent of the Department. Complaint at ¶15; Defendants' Answer ("Answer") at ¶15. [A copy of the Answer is attached hereto at Exhibit B.]

4. At all relevant times, Defendant Chabot ("Chabot") was a trooper within the Department employed by the State. Complaint at ¶16; Answer at ¶16.

## Chronology of Events

5. On July 11, 2006, the Plaintiffs were traveling in a van on Route 95 in Richmond, Rhode Island, that was operated by Plaintiff Tamup. Complaint at ¶21; Answer at ¶21; Deposition of Defendant Chabot, October 29, 2007 ("Chabot Depo."), at p. 9, lines 7-8; p. 13, lines 3-5. [A copy of relevant portions of Defendant Chabot's deposition transcript are attached hereto at Exhibit C.]

6. While the Plaintiffs were traveling on Route 95, a marked state police cruiser, operated by Defendant Chabot, pulled behind Plaintiffs' van and engaged its overhead lights after the operator of the van neglected to employ its turn signal. Complaint at ¶22; Chabot Depo. at p. 10, lines 10-12; p. 11, lines 18-20; p. 12, lines 2-4.

7. Plaintiff Tamup immediately pulled the vehicle to the side of the road and stopped the vehicle. Complaint at ¶23; Answer at ¶23.

8. Defendant Chabot then exited his police cruiser and approached Plaintiffs' van on the driver's side. Complaint at ¶25; Chabot's Depo. at p. 12, lines 13-15; p. 14, lines 2-9.

9. At that time, Defendant Chabot requested that Plaintiff Tamup produce his license, the vehicle's registration, and proof of insurance. Complaint at ¶25; Answer at ¶25; Chabot's Depo. at p. 12, lines 16-18.

10. In the presence of Defendant Chabot, Plaintiff Tamup then reached in the direction of the van's glove box. *Id.* at 15, lines 6-7; 19-22; *see also* Deposition of Plaintiff Carlos E. Tamup, dated March 31, 2008 ("Tamup Depo.") at p. 28, lines 7-24 [A copy of relevant portions of Plaintiff Tamup's deposition transcript are attached hereto at Exhibit D.]

11. Plaintiff Tamup immediately gave his license and registration to Defendant Chabot. Complaint at ¶26; Chabot Depo. at p. 16, lines 1-3.

12. Defendant Chabot then asked Plaintiff Tamup where he was traveling. *Id.* at 17, lines 5-7.

13. Plaintiff Tamup responded that he and the other Plaintiff passengers were going to work in Westerly, Rhode Island. *Id.* at 17, lines 23-25; p. 18, lines 1-6.

14. Defendant Chabot, using Plaintiff Tamup as a translator, then requested that Plaintiffs Astrid Estrada, Wendy Estrada, Guilfredo E. Munoz, Jose A. Aquino, Cruz F. Rivera, Jose Burgos, Abelino M. Urizar, Israel Tebalan, Rolando Noriega, Boris R. Cruz, Elsa Hernandez, and Vila Vicencio produce identification. Complaint at ¶29; Chabot Depo. at p. 16, lines 4-7.

15. While a few of the Plaintiffs were able to produce Guatemalan Consular documents, most of the Plaintiffs did not possess any form of identification. Complaint at ¶30; Chabot Depo. at p. 20, lines 6-8; p. 21, lines 7-8.

16. Due to the fact that most of the Plaintiffs' did not possess any form of identification, Defendant Chabot then asked the Plaintiffs if they possessed any documentation that would establish their U.S. citizenship. Complaint at ¶31; Chabot Depo. at p. 21, lines 15-19, 25; p. 22, lines 1-3.

17. Defendant Chabot requested the aforesaid documentation because he had a "hunch" that the Plaintiffs' were illegal immigrants. *Id.* at 22, lines 4-15; p. 26, lines 10-12.

18. The Plaintiffs were unable to produce documentation establishing U.S. citizenship. Complaint at ¶32; Answer at ¶32.

19. Defendant Chabot then told Plaintiff Tamup to exit the vehicle, and asked him, "Why are you transporting undocumented persons?" Complaint at ¶33.

20. After Plaintiff Tamup exited the van, Defendant Chabot conducted a *Terry* patdown of Plaintiff Tamup. *Terry v. Ohio*, 392 U.S. 1 (1968); Complaint at ¶33; Chabot Depo. at p. 23, lines 3-7.

21. At no time, while Plaintiff Tamup was either inside his van or from the point he exited the vehicle to the time of the *Terry* patdown, did Defendant Chabot witness Plaintiff Tamup acting in an "unusual" fashion. Chabot Depo. at p. 15, lines 5-10; p. 24, lines 4-7; *see also* Tamup Depo. at p. 29, lines 2-5.

22. The other Plaintiffs remained still and silent during the motor vehicle stop. Chabot Depo. at p. 24, lines 11-16; Tamup Depo. at p. 29, lines 6-23.

23. Defendant Chabot then returned to his police cruiser and conducted a criminal check of Plaintiff Tamup and checked the status of his operator's license. Complaint at ¶¶26 and 27; Answer at ¶27; Chabot Depo. at p. 25, lines 1-8.

24. The results of the criminal check were negative and Plaintiff Tamup's license was valid. Complaint at ¶27; Answer at ¶27; Chabot Depo. p. 25, lines 9-10.

25. Defendant Chabot then contacted the Office of Immigration and Customs Enforcement ("ICE"), located in Providence, Rhode Island, and informed ICE that he had pulled over a passenger van possibly containing illegal immigrants. Chabot Depo. at p. 26, lines 3-15; p. 27, lines 9-16.

26. Defendant Chabot contacted ICE because he "was acting on a hunch." *Id.* at p. 28, lines 11-12.

27. Defendant Chabot then returned to the passenger van and conducted a second *Terry* patdown of Plaintiff Tamup. Complaint at ¶35; Answer at ¶35; Chabot Depo. at p. 27, lines 17-22.

28. Defendant did not witness any "unusual" behavior or movement by Plaintiff Tamup or the other Plaintiffs between the first *Terry* patdown and the second *Terry* patdown of Plaintiff Tamup. Chabot Depo. at p. 28, lines 7-10.

29. Thereafter, Trooper Donahue arrived at the scene and conferred with Defendant Chabot. Complaint at ¶34; Answer at ¶34.

30. Defendant Chabot then advised the Plaintiffs that, because they did not have identification, they were going to be escorted by the state police to ICE. Complaint at ¶36; Tamup Depo. at p. 21, lines 16-20; 22, lines 7-12.

31. Defendant Chabot and Trooper Donahue then escorted the Plaintiffs to ICE. Complaint at ¶38; Chabot Depo. at p. 33, lines 6-14.

**Deposition of Defendant Chabot**

32. During his deposition, on October 29, 2007, Defendant Chabot testified that he had received police training relative to *Terry* stops and patdown at the Rhode Island State Police Academy ("Academy") in January, 2000. Chabot Depo. at pg. 5, lines 20-24.

33. Defendant Chabot testified that, since graduating from the Academy, he had received "refresher" training relative to *Terry* patdowns within "the last few years." *Id.* at p. 5, line 25; p. 6, lines 1-3, 9-10.

34. Defendant Chabot testified that a *Terry* patdown of an individual is justified "for officer safety," to search for weapons, and following "any type of movements within a vehicle." *Id.* at p. 6, lines 24-25; p. 7, lines 1-18.

35. Defendant Chabot testified that he was aware of at least one other instance in Rhode Island wherein a State police trooper contacted ICE following a traffic stop where the

occupants where unable to produce proof of U.S. citizenship. *Id*. at p. 28, lines 22-25; p. 29, lines 1-12.

36. Defendant Chabot testified that the other incident was "extremely" similar to the incident that is the subject of the case at bar in that "a van was stopped, apparent paperwork could not be produced and that trooper decided to call ICE." *Id*. at p. 29, lines 8-12.

Plaintiffs,
By their Attorneys,

/s/ V. Edward Formisano
V. Edward Formisano (#5512)
**American Civil Liberties Union,**
**Rhode Island Affiliate**
Sinapi, Formisano & Co., Ltd.
100 Midway Place, Suite 1
Cranston, RI 02920-5707
(401)944-9690
(401)943-9040 (facsimile)

**CERTIFICATION**

TO: Brenda D. Baum, Assistant Attorney General
Department of Attorney General
150 South Main Street
Providence, RI 02903

I hereby certify that the within document has been electronically filed with the Court on this 22nd day of May, 2008 and is available for viewing and downloading from the ECF system and was sent by electronic mail to the above-referenced.

/s/ V. Edward Formisano