**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **ASTRID G. ESTRADA, WENDY M. ESTRADA GUILFREDO E. MUNOZ, JOSE A. AQUINO, CRUZ F. RIVERA, CARLOS E. TAMUP, JOSE BURGOS, ABELINO M. URIZAR, ISRAEL TEBALAN, ROLANDO NORIEGA, BORIS R. CRUZ and ELSA HERNANDEZ VILA VICENCIO** | : | |
| **Plaintiffs** | : | |
| **v.** | : | **C.A. No. 07-10ML** |
| **STATE OF RHODE ISLAND, State Police Department, STEVEN M. PARÉ, individually and in his official capacity as Superintendent of the Rhode Island State Police, THOMAS CHABOT, individually and in his official capacity as a state trooper employed by the State of Rhode Island, JANE DOE, individually and in her official capacity as a state trooper employed by the State of Rhode Island** | : | |

**<u>DEFENDANTS' OBJECTION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Now come the Defendants, pursuant to Federal Rule of Civil Procedure 56 and Local Rule Cv 7(b), and oppose Plaintiffs' Motion for Partial Summary Judgment. For the reason set forth in Defendants' Memorandum in Opposition to Plaintiffs' Motion for Partial Summary Judgment, Plaintiffs are not entitled to summary judgment on counts II and VI of Plaintiffs' Amended Complaint.

Wherefore, the Defendants pray that that Plaintiffs' Motion is denied.

Respectfully submitted,

DEFENDANTS
By their Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

/s/ James R. Lee

JAMES R. LEE (4305)
Assistant Attorney General
R.I. Department of the Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2314
Fax: (401) 222-2995
jlee@riag.ri.gov

/s/ Brenda D. Baum

BRENDA D. BAUM (5184)
Assistant Attorney General
R.I. Department of the Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2294
Fax: (401) 222-3016
bbaum@riag.ri.gov

/s/ John M. Moreira

JOHN M. MOREIRA (7371)
Special Assistant Attorney General
R.I. Department of the Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2411
Fax: (401) 222-3016
jmmoreira@riag.ri.gov

## CERTIFICATION

I hereby certify that I have electronically mailed the foregoing document on this 27th day of June, 2008, to the attorney(s) of record listed below:

**V. Edward Formisano, Esquire**
edf@sfclaw.com

**/s/ John M. Moreira**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **ASTRID G. ESTRADA, WENDY M. ESTRADA GUILFREDO E. MUNOZ, JOSE A. AQUINO, CRUZ F. RIVERA, CARLOS E. TAMUP, JOSE BURGOS, ABELINO M. URIZAR, ISRAEL TEBALAN, ROLANDO NORIEGA, BORIS R. CRUZ and ELSA HERNANDEZ VILA VICENCIO**<br>**Plaintiffs** | : | |
| **v.** | : | **C.A. No. 07-10ML** |
| **STATE OF RHODE ISLAND, State Police Department, STEVEN M. PARÉ, individually and in his official capacity as Superintendent of the Rhode Island State Police, THOMAS CHABOT, individually and in his official capacity as a state trooper employed by the State of Rhode Island, JANE DOE, individually and in her official capacity as a state trooper employed by the State of Rhode Island** | : | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiffs seek partial summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, against defendants as to liability on Counts II and VI of their Complaint. For the reasons set forth below, Plaintiffs' motion should be denied.

Defendants have also moved for summary judgment on all counts. See Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment (hereinafter "Defendants' Memorandum"). For the reasons set forth in Defendants'

Motion for Summary Judgment, the Court should not only deny Plaintiffs' Motion but should enter judgment for Defendants on all claims.

## II. MATERIAL FACTS

See Defendants' Statement of Disputed Facts.

## III. ARGUMENT

Plaintiffs seek summary judgment on counts II and VI. First, they argue that they are entitled to summary judgment on their claim that the pat downs of Plaintiff Tamup were unconstitutional. They make this claim even though the pat downs were performed for purposes of officer safety while a van containing fourteen persons, most of whom could not identify themselves, was stopped along side Interstate 95. Second, they maintain that they were unlawfully seized when they were detained and escorted to ICE, although they admittedly were all in this country illegally and Trooper Chabot has testified they voluntarily followed him to ICE. Third, Plaintiffs claim that summary judgment should be granted on their claim of failure to supervise or train. For the reasons set forth below, Plaintiffs' motion should be denied in its entirety.

### A. Both Terry Pat Downs Were Justified

Plaintiffs' motion should be denied because the facts of the motor vehicle stop taken in the proper context of the entire encounter in conjunction with Trooper Chabot's testimony justify the pat downs of Plaintiff Tamup.[1] Moreover, Trooper Chabot is entitled to qualified immunity as to this claim.

Plaintiffs stress Tamup's compliance with the trooper and the lack of "any remarkable, sudden, or threatening movements," while Tamup and his unidentified

---

[1] As argued in Defendants' Memorandum, at p. 33, the Plaintiffs who were not patted down do not have standing to challenge the pat down of Plaintiff Tamup. See United States v. Sowers, 136 F.3d 24, 28-29 (1st Cir. 1998).

passengers were seated in the van or while Tamup walked around the vehicle. Plaintiffs' Memorandum, p. 4. Plaintiffs disregard, however, what was not known or not disclosed to Trooper Chabot during the stop. They initially overlook the fact that Trooper Chabot returned to his police car prior to the first pat down of Tamup. See Statement of Disputed Facts, ¶¶'s 15, 16, 18; Exhibit P-1: Video of Stop.[2] The passengers had been informed that Trooper Chabot needed their identification upon his return to the van. See Exhibit P-2: Transcript of Video, p. 2, line 25; Exhibit M: Chabot Depo., p.23, lines 3-7. When Trooper Chabot returned to and was in his vehicle, the interactions and discussions of Tamup and the thirteen passengers were unknown to Trooper Chabot. See Exhibit P-1: Video of Stop. Similarly, Trooper Chabot later "couldn't see Mr. Tamup" between the first and second pat downs. Supplemental Exhibit M: Chabot Depo., p. 28.

The facts viewed as they developed further undermine Plaintiffs' assertion. This lone Trooper stopped a full van on the side of Route 95. The occupants of the van greatly outnumbered Trooper Chabot and several of them had no identification. See Plaintiffs' Statement of Undisputed Facts In Support of Motion for Partial Summary Judgment (hereinafter "Plaintiffs' Statement of Undisputed Facts"), ¶¶ 5, 15. In his visits to the van, the identity of many of the occupants remained unknown. See Plaintiffs' Statement of Undisputed Facts, ¶ 15 ("most of the Plaintiffs did not possess any form of identification"). The Plaintiffs' admissions of undocumented status and the circumstances of the stop ultimately provided reasonable suspicion of federal immigration violations. See Defendants' Memorandum, pp. 33-36. The unknown

[2] The exhibits, which are referenced in this memorandum, have been provided to the Court by way of Defendants' Motion for Summary Judgment; with the exception of Supplemental Exhibit M. Supplemental Exhibit M contains further excerpts of the deposition of Trooper Chabot, and it has been filed with this Memorandum.

actions of these predominantly unknown individuals inside of the full van justified a heightened concern for safety. See Defendants' Memorandum, pp. 34-36.

Plaintiffs maintain that Trooper Chabot never articulated "that he had an 'actual suspicion' that Plaintiff Tamup possessed a weapon or articulated any facts to support such a suspicion." Plaintiffs' Memorandum, p. 5. However, Trooper Chabot's testimony sufficiently established his safety concerns and suspicion. Exhibit M: Chabot Depo., p. 23. Trooper Chabot testified as follows:

> I had 14 people in the van. And then once Mr. Tamup is in the van and he comes out of the van, I have no idea what he might have brought with him from the van, whether it be a knife, whether it be a weapon of some sort, so for my safety I conducted a Terry pat.

Id. Contrary to Plaintiffs' assertions, this testimony establishes that Trooper Chabot had an articulable suspicion that Plaintiff Tamup may have obtained a weapon and the surrounding circumstances show the reasonableness of his belief. The reasonableness inquiry under the Fourth Amendment for police action has no more stringent requirement. See Terry v. Ohio, 392 U.S. 1, 27 (1983) ("The officer need not be absolutely certain that the individual is armed").

In regard to the second pat down, Plaintiffs attempt to cast doubt on Trooper Chabot's testimony that Tamup "could have picked up a weapon while he got back in his vehicle." Plaintiffs' Memorandum, p. 6; see Supplemental Exhibit M: Chabot Depo., p. 28. However, Trooper Chabot had abundant grounds for such concerns. By this point, Tamup and other Plaintiffs had essentially admitted to committing the federal crime of entering the United States without being examined by United States Immigration (8 U.S.C. § 1325), and Tamup eventually acknowledged that he was transporting

individuals whom he knew were unlawfully present in the United States (8 U.S.C. § 1324). Supplemental Exhibit M: Chabot Depo., p. 17. Trooper Chabot had asked Tamup to exit the vehicle to discuss ICE's request that the Plaintiff's report to the ICE office. In this light, Trooper Chabot's concerns were certainly supported by the facts.

Plaintiffs' assertion that Trooper Chabot "should have searched the van, the van's compartment, and the other passengers prior to permitting Plaintiff Tamup to return to the vehicle" (Plaintiffs' Memorandum, p. 6) is ironic since it calls for the police to take more intrusive action against them. Moreover, it would have increased the risk to Trooper Chabot, as it would have placed him in various precarious positions from which he would lose sight of all or many of the unidentified persons who greatly outnumbered him. Instead, the minimally intrusive manner in which Trooper Chabot conducted the motor vehicle stop and pat downs was constitutionally appropriate. Therefore, Plaintiffs have not established that they are entitled to judgment on the issue of the lawfulness of the pat down frisks.

Plaintiff's rely on United States v. Lott, 870 F.2d 778, 782 (1st Cir. 1989), in arguing that Trooper Chabot lacked reasonable suspicion to conduct the pat downs of Tamup. However, the facts of that case are clearly distinguishable from this one. In the context of a suppression hearing, the district court in Lott discredited the officers' testimony that they feared for their safety. The First Circuit affirmed the suppression based on the timing of the frisk and the nature of the frisk. The fact that neither defendant in Lott was frisked upon exiting the car or prior to a search of the car undermined the concern the police officers asserted for their safety. The Court also

found that the frisk was improper because "the search was directed towards finding contraband" and "was not a search for weapons only." Lott, 870 F.2d at 785.

Here, no facts belie the concern Trooper Chabot, while alone on the side of Route 95, expressed for his safety. The timing of the frisks supports his safety concerns. In contrast to Lott, the record reveals that Trooper Chabot patted down Tamup upon each of Tamup's exits from the van. See Exhibit P-1: Video of Stop; Supplemental Exhibit M: Chabot Depo., p. 23; Plaintiff's Statement of Undisputed Facts, ¶ 20. Additionally, nothing in the record indicates, nor have Plaintiffs argued, that the pat downs were directed towards anything other than weapons. Thus, Plaintiffs' reliance on Lott is misplaced.

Even were this Court to find that Plaintiffs have established that the pat downs amounted to a violation of Tamup's constitutional rights, they have not established that no material issues exist as to Trooper Chabot's entitlement to qualified immunity for these actions. They have not shown that the right was clearly established at the time of the encounter. See Jennings v. Jones, 499 F.3d 2, 16 (1st Cir. 2007). Nor have they shown that an objectively reasonable officer would have understood that conducting pat downs in these circumstances would violate a clearly established right. Id.

The evidence, as detailed above, viewed in a light most favorable to Defendants is sufficient to defeat Plaintiffs' motion for summary judgment as to the pat downs of Plaintiff Tamup. Wherefore, Plaintiffs' motion for summary judgment as to Counts II and VI of the complaint should be denied.

**B. The Detention and Escort of Plaintiffs Were Lawful**

Plaintiffs allege that Trooper Chabot unlawfully "seized" them "by requiring them to follow him and Trooper Donahue to ICE." Plaintiffs' Memorandum, p. 8. They support this claim by arguing that "Defendant Chabot did not possess any information that would indicate that the Plaintiffs were illegal immigrants." Plaintiffs' Memorandum, p. 8. This argument is not supported by the record. First, the record refutes their contention that they were seized during their trip to ICE. Trooper Chabot testified that Plaintiffs voluntarily drove to ICE at ICE's request. See Exhibit M: Chabot Depo., p. 31; Exhibit N: Incident Report Narrative for Trooper Thomas Chabot, p. 2. Second, as to the information possessed by Trooper Chabot, Plaintiff Astrid Cabrera testified in her deposition that the Plaintiffs admitted during the stop to being in this country illegally. See Exhibit B: A. Cabrera Depo., p. 24.

Even without the aforementioned glaring factual issues, Trooper Chabot was justified in his actions. He initially suspected that Plaintiffs were undocumented aliens, based on their lack of identification. This suspicion evolved into probable cause of violations of federal immigration law by the Plaintiffs, based on the Plaintiffs' admissions. Thus, Plaintiffs' motion should be denied.

In the following deposition testimony, Plaintiff Astrid Cabrera admitted Plaintiffs' undocumented status:

> Q: You said the trooper asked you all in the van whether you had permission or license to be in this country, and someone said no?
> A: No. When he asked, we all said no.
> Q: Everyone in the van said the word, no?
> A: No. Not everybody. Just with their faces.
> Q: Okay. So some people in the van actually said the word, no?

> A: I don't remember. I know that I was one of those who said no.
> Q: So you said the word, no?
> A: Yes.

Exhibit B: A. Cabrera Depo., p. 24.

Plaintiff Noriega's testimony confirmed that Plaintiff Astrid Cabrera, as well as, other Plaintiffs admitted their undocumented status. He testified as follows:

> Q: []. When the officer - - you said the officer asked the passengers in the van if they had a green card; is that correct?
> A: Yes.
> Q: Did anyone in the van answer the officer at that time?
> A: Yes
> Q: Who answered?
> A: The ones who were seated up front said to him that they didn't have I.D.'s.
> Q: Did they say they didn't have green cards?
> A: Yes.
> Q: Okay. Was Astrid Cabrera one of the individuals who told the Trooper that she didn't have a Green Card?
> A: Yes.

Exhibit H: Noriega Depo., pp. 21-22.

Plaintiff Tamup also led Trooper Chabot to believe that the Plaintiffs were undocumented aliens, when he testified as follows:

> Q: Did he ask you whether the other people in the van had work papers?
> A: After he got me out the car and in the back of it, when we were behind it, he said to me you all have – they all have to have working papers.
> Q: And did you say anything to the policeman?
> A: I told him that I couldn't do that because all I did was take them to work. And then he said to me give me your social and your green card.
> Q: And what did you respond to the policeman?
> A: No. I said that I didn't have it. I only had my license.
> Q: Did he ask you whether anyone else in the van had a green card?

> A: Yes. He said that if they were going to work, they had to have their papers, that if they worked here, they have to have a green card.
> Q: Did you tell him that there was – no one in the van had a green card or work papers?
> A: We told him we didn't have anything.

Exhibit A: Tamup Depo., pp. 16-17.

The testimony of these three Plaintiffs speaks for itself. Trooper Chabot learned from the Plaintiffs' statements that none of the occupants of the van were documented aliens. Plaintiffs' characterization of the facts that "none of the Plaintiffs indicated to Defendant Chabot that they were in the U.S. illegally" (Plaintiffs' Memorandum, p. 8.) contradicts sworn deposition testimony from these Plaintiffs. For example, Plaintiff Astrid Cabrera testified that she responded "no" to Trooper Chabot's question "whether [they] had permission or license to be in this country." Exhibit B: A. Cabrera Depo., p. 24. Thus, Trooper Chabot possessed abundant "information that would indicate that the Plaintiffs were illegal immigrants." Plaintiffs' Memorandum, p. 8.

Plaintiffs' mistakenly rely on limited excerpts of Trooper Chabot's testimony where he stated that he had a "hunch" that the Plaintiffs were in the country illegally. Plaintiffs' Memorandum, p. 8. In fact, at the time of the escort to ICE, Trooper Chabot had probable cause to arrest Plaintiffs for committing the federal crime of entering the United States without being examined by United States Immigration. See 8 U.S.C. § 1325; see also United States v. Santana-Garcia, 264 F.3d 1188 (10th Cir. 2001) (individual's admission of illegal alien status created probable cause for arrest by state trooper). This probable cause, whether realized or not by the officer in the field, justified

all of Trooper Chabot's actions and, in fact, would have justified a seizure and forcible delivery to ICE. See Santana-Garcia, 264 F.3d 1188, 1193.[3]

The "hunch" testimony pertained to the point in the encounter prior to the Plaintiffs' admissions of undocumented status. See Exhibit M: Chabot Depo., pp. 22, 26. Trooper Chabot was not asked about his level of suspicion at the time he requested that the Plaintiffs proceed to the ICE office. At any rate, whatever Trooper Chabot's subjective belief was, probable cause existed to arrest the Plaintiffs for "suspected violation[s] of federal immigration law." Santana-Garcia, 264 F.3d 1188, 1193.

At the very least, reasonable suspicion of violations of federal immigration law justified Trooper Chabot's actions of detaining Plaintiffs for further investigation by ICE.[4] See Defendants' Memorandum, pp. 29-30; see also United States v. Ramirez-Cubillas, 223 F.Supp.2d 1049 (D. Neb. 2002) (after driver stated that passengers were not legally in U.S., detention for less than one hour for arrival of INS agents did not violate 4th Amendment); United States v. Lopez-Moreno, 420 F.3d 420, 431 (5th Cir. 2005) (prolonged stop of one hour to wait for Immigration agent was justified); United States v. Soriano-Jarquin, 492 F.3d 495, 501 (4th Cir. 2007) (proper for trooper to await the arrival of ICE agents for an administrative Immigration inquiry).[5]

---

[3] Trooper Chabot had the authority to arrest Plaintiffs for violations of federal immigration law, as authorized by state law. See R.I. Gen. Laws § 42-28-19 (duty of state police to detect crime, assist in the investigation of "any criminal matters" within the state, and apprehend offenders); see also 8 U.S.C. § 1357(g)(10)(b) (state law enforcement "to cooperate with the Attorney General in the identification, apprehension, detention, or removal of aliens not lawfully present in the United States"); Santana-Garcia, 264 F.3d at 1193 (federal law does not displace state or local authority to arrest individuals for violating federal immigration laws).

[4] Even if Trooper Chabot's testimony did not "provide the legal justification" for his actions, this "does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." United States v. Bizier, 111 F.3d 214 (1st Cir. 1997) (quoting Whren v. United States, 517 U.S. 806 [1996]).

[5] Defendants note that Plaintiffs have not moved for summary judgment on causation, so they will not address it in this opposition.

Even were this Court to find that Plaintiffs have established that the continued detention and escort to ICE amounted to a violation of their Fourth Amendment rights, they have not established that no material issues exist as to Trooper Chabot's entitlement to qualified immunity. They have not shown that the right was clearly established at the time of the encounter. See Jennings, 499 F.3d 2, 16. Nor have they shown that Trooper Chabot's actions were objectively unreasonable at the time of the stop. Id. In other words, an objectively reasonable officer in Trooper Chabot's position could have believed that state and federal law authorized him to detain the Plaintiffs for further ICE investigation. See Tremblay v. McClellan, 350 F.3d 195 (1st Cir. 2003) (even if the law required a higher level of suspicion to take a juvenile into custody, an objectively reasonable officer could have understood that he was authorized to do so); Ringuette v. City of Fall River, 146 F.3d 1 (1st Cir. 1998) (police's decision to hold incapacitated person longer than the statutory twelve-hour time limit on protective custody was "neither at odds with clearly established case law, nor so manifestly unreasonable a seizure.").

Trooper Chabot also properly relied on the request of ICE to interview Plaintiffs. See Defendants Statement of Disputed Facts, ¶ 30. See Liu v. Phillips, 234 F.3d 55 (1st Cir. 2000) (finding qualified immunity for local police officer where he made reasonable decision to comply with request of Immigration agent for assistance in a mistaken arrest for immigration violations). Therefore, Plaintiffs' motion should be denied because Trooper Chabot remains protected by qualified immunity. Consequently, for the reasons set forth above, Plaintiffs motion for summary judgment on Counts II and VI, on the theory that they were unlawfully seized, should be denied.

**C. Plaintiffs Have Not Established a Failure to Train, Instruct, and/or Supervise Claim**

Plaintiffs claim that the State of Rhode Island (hereinafter "State") and Superintendent Pare were deficient in properly training Trooper Chabot "relative to pat downs and seizures of individuals." Plaintiffs' Memorandum, p. 9. Only when a governmental employee's "execution of a government's policy or custom . . . inflicts the injury" and is the "moving force" behind the constitutional violation can a municipality be liable under a failure to train claim. Young v. City of Providence, 404 F.3d 4, 25 (1st Cir. 2005) (internal citations omitted).

To establish such liability, plaintiffs must show the following elements: (1) plaintiffs' harm was caused by a constitutional violation, and (2) the policymaker or supervisors were responsible for that violation. See Young, 404 F.3d 4, 26. There is no proof of the first element. As discussed above, Plaintiffs have not established a constitutional violation either in the pat downs of Plaintiff Tamup or in their extended detention. See Defendants' Memorandum, pp. 20-36. Therefore, Plaintiffs' motion should be denied because they have not fulfilled this first element. See Evans v. Avery, 100 F.3d 1033, 1040 (1st Cir. 1996) (municipality can not be held liable under §1983 for failure to train absent an underlying constitutional violation by one of its officers).

In any event, as to the second element, the complained of conduct must constitute a "policy or custom" attributable to the municipality. Id. In assessing municipal or supervisory responsibility, the United States Supreme Court has imposed two additional requirements: (a) the policy or custom must actually have caused the plaintiff's injury, and (b) the defendant possessed the requisite level of fault, which is generally labeled in

these sorts of cases as "deliberate indifference." Young, 404 F.3d 4, 26 (quoting County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404 [1997]).

The main thrust of Plaintiffs' claim is that Trooper Chabot lacked an understanding of the grounds for a Terry pat down due to inadequate training. This claim is flawed at its foundation because Plaintiffs have not shown that Trooper Chabot had deficient knowledge of the basis for a pat down. As Plaintiffs have quoted, the First Circuit has held that "the police may take reasonable steps to protect themselves by searching a suspect for weapons or taking other protective measures." Plaintiffs' Memorandum, p. 3 (quoting United States v. Taylor, 162 F.3d 12, 17 [1st Cir. 1998]). To determine whether a pat down search is an appropriate step following a valid Terry stop, the key is whether, under the circumstances, "the officer is justified in believing that the person is armed and dangerous to the officer or others." United States v. Romain, 393 F.3d 63, 71 (1st Cir. 2004).

Trooper Chabot's testimony does not indicate any lack of understanding of the principles of Terry pat downs. Trooper Chabot testified that a Terry pat down is "done for weapons" to "make sure that [he's] safe," and that one factor is "any type of movements within a vehicle." Supplemental Exhibit M: Chabot Depo., p. 7. Therefore, none of Trooper Chabot's testimony contradicts any of the First Circuit principles relied upon by Plaintiffs.

In addition to an absence of proof of any misunderstanding of the law by Trooper Chabot, Plaintiffs' assertion that Trooper Chabot believed that "the searches are done for 'weapons'" is inaccurate. Plaintiffs' Memorandum, p. 10. Trooper Chabot's statement that "it's done for weapons" was in response to a line of questioning regarding Terry pat

downs, and he never indicated a belief that such pat downs entailed a more invasive "search" than permitted. Supplemental Exhibit M: Chabot Depo., pp. 6-7. Thus, no deficiency in training has been shown to support this claim.

Even were this Court to somehow interpret these statements of Trooper Chabot to show a deficient understanding of the basis for Terry pat downs, Plaintiffs have failed to establish any elements of their deficient training or supervision claim. First, they have not shown a "direct causal link" between a Rhode Island State Police policy or custom and the allegedly unconstitutional pat downs. City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989). Second, they have not shown that the alleged failure to train Trooper Chabot was a policy or custom of the State Police amounting "to deliberate indifference to the rights of persons with whom the police come into contact." Id. at 388. In this regard, they have not established the inadequacy of the "training program in relation to the tasks the particular officers must perform." Id. at 390; see also Dirico v. City of Quincy, 404 F.3d 464, 468-69 (1st Cir. 2005). Indeed, no deposition testimony from the Plaintiffs or any witnesses specifies a deficiency in State Police training relative to pat downs. See Exhibit G: Cruz Depo., p. 33; Exhibit I: Vila Vicencio Depo., p. 45; Exhibit F: Aquino Depo., p. 18; Exhibit B: A. Cabrera Depo., p. 33; Exhibit D: Burgos Depo., p. 25. Consequently, Plaintiffs' motion for summary judgment against the State and Superintendent Pare on the claims for failure to train or supervise in Terry pat downs should be denied.

Plaintiffs also claim that the State and Superintendent Pare "failed to adequately train troopers relative to investigatory stops, searches or arrests of purported illegal immigrants." Plaintiffs' Memorandum, p. 10. Similar to their "pat down" claims,

Plaintiffs have failed to establish any of the elements of this claim. See Harris, 489 U.S. 378, 385-390. Because Plaintiffs have not alleged § 1983 violation based on "an official policy promulgated by officials with final policymaking authority" or a specific State Police training, their claim should be construed as based on a "custom [which] develops from the bottom-up." Baron v. Suffolk County Sheriffs Department, 402 F.3d 225, 236 (1st Cir. 2005); Harris, 489 U.S. at 390 (a policy generally "reflects a 'deliberate' or 'conscious' choice" by decision makers) (citations omitted). "In a § 1983 suit premised on custom, then, we must first determine whether the custom is fairly attributable to the municipality." Baron, 402 F.3d at 236.

Plaintiffs fall well short because they have failed to submit sufficient evidence of the existence of an alleged custom of the State Police of unlawfully detaining suspected, illegal immigrants. Plaintiffs only offer Trooper Chabot's reference to one other motor vehicle stop that resulted in a state trooper contacting ICE. Plaintiffs have not shown that a "custom or practice is so well-settled and widespread that the policymaking officials . . . can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." Silva v. Worden, 130 F.3d 26, 30 (1st Cir. 1997) (citations omitted); Brown, 520 U.S. at 409 (liability may occur where a violation of a federal right is a "highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations"). No jury could reasonably infer based on the evidence presented by Plaintiffs that a custom existed of improperly conducting "investigatory stops, searches or arrests of purported illegal immigrants" in the State Police. Plaintiffs' Memorandum, p. 10.

Assuming arguendo that Plaintiffs were able to establish such a custom, they have not come close to showing that such a custom caused their injuries or that such a custom was a result of Defendants' deliberate indifference to their rights. As a result, Plaintiffs' motion for summary judgment against the State and Superintendent Pare as to Plaintiffs' federal and state law claims for failure to train or supervise in investigative stops involving immigrants should be denied.

## CONCLUSION

**WHEREFORE**, Defendants respectfully pray that this Court deny Plaintiffs' motion for partial summary judgment as to liability on Counts II and VI of the complaint.

Respectfully Submitted,

DEFENDANTS

By their Attorneys,

PATRICK C. LYNCH
ATTORNEY GENERAL

/s/ James R. Lee

JAMES R. LEE (4305)
Assistant Attorney General
R.I. Department of the Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2314
Fax: (401) 222-2995
jlee@riag.ri.gov

/s/ Brenda D. Baum

BRENDA D. BAUM (5184)
Assistant Attorney General
R.I. Department of the Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2294
Fax: (401) 222-3016
bbaum@riag.ri.gov

/s/ John M. Moreira

JOHN M. MOREIRA (7371)
Special Assistant Attorney General
R.I. Department of Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2411
Fax: (401) 222-3016
jmoreira@riag.ri.gov

## CERTIFICATION

I hereby certify that I have electronically mailed the foregoing document on this 27th day of June, 2008, to the attorney(s) of record listed below:

**V. Edward Formisano, Esquire**
edf@sfclaw.com

/s/ John M. Moreira