**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **ASTRID G. ESTRADA, et al.,** | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **C.A. No.:07-10ML** |
| | : | |
| **STATE OF RHODE ISLAND, et al.,** | : | |
| **Defendants** | : | |

**PLAINTIFFS' OBJECTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Now come the Plaintiffs in the above-cited matter and do hereby object to Defendants' Motion for Summary Judgment and, as grounds therefor and in support thereof, rely on their Memorandum of Law filed simultaneously herewith.

**WHEREFORE**, the Plaintiffs respectfully pray that Defendants' Motion for Summary Judgment be denied.

PLAINTIFFS,
By their Attorneys,

Dated: June 30, 2008

/s/ V. Edward Formisano

V. Edward Formisano (#5512)
American Civil Liberties Union,
Rhode Island Affiliate
Sinapi, Formisano & Co., Ltd.
100 Midway Place, Suite 1
Cranston, RI 02920-5707
(401) 944-9690
(401) 943-9040 (facsimile)

# CERTIFICATION

To: James R. Lee, Assistant Attorney General
Brenda D. Baum, Assistant Attorney General
John M. Moreira, Special Assistant Attorney General
Department of Attorney General
150 South Main Street
Providence, RI 02903

I hereby certify that the within document has been electronically filed with the Court on this 30th day of June, 2008 and is available for viewing and downloading from the ECF system and was sent by electronic mail to the above-referenced.

/s/ V. Edward Formisano

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **ASTRID G. ESTRADA, et al.**, | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **C.A. No.:07-10ML** |
| | : | |
| **STATE OF RHODE ISLAND**, **et al.**, | : | |
| **Defendants** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OBJECTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I. Description of Motion

Defendants have moved for summary judgment on the grounds that a 42 U.S.C. §1983 claim cannot be brought against Defendant State of Rhode Island and Defendants Pare and Chabot in their official capacities, that the 42 U.S.C. §1983 claims against Defendant Chabot in his individual capacity should be dismissed on the grounds of qualified immunity or the absence of a constitutional violation, that there is no evidence that the Plaintiffs were discriminated against pursuant to 42 U.S.C. §1981, and that the Plaintiffs' common law claims should be dismissed due to the purported existence of reasonable suspicion and the application of qualified immunity.

## II. Facts

*See* Plaintiffs' Statement of Undisputed Facts.

## III. Issues

1. Whether the Plaintiffs can maintain §1983 claims against either of the individual Defendants in their official capacities or Defendant State.

2. Whether the Plaintiffs have alleged sufficient facts to establish that they were subjected to a violation of their Fourth Amendment rights to be free from unreasonable searches and seizures actionable pursuant to 42 U.S.C. §1983.

3. Whether the Plaintiffs' §1983 claims are barred by the doctrine of qualified immunity and the existence of reasonable suspicion.

4. Whether the Plaintiffs have alleged sufficient facts to establish a violation of 42 U.S.C. §1981.

5. Whether the Plaintiffs' common law claims are barred by the doctrine of qualified immunity and the existence of reasonable suspicion.

## IV. Points and Authorities

### A. Standard of Review in Considering a Motion for Summary Judgment

Summary judgment is a drastic remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *International Ins. Co. v. Metro. St. Louis Sewer Dist*., 938 F.Supp. 568 (E.D.Mo. 1996). Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Grubb v. KMS Patriots, L.P*., 88 F.3d 1, 3 (1st Cir. 1996)(emphasis added); Fed.R.Civ.P. 56(c). The trial court may search for the existence of factual issues, but may not determine them, *Steinberg v. State,* 427 A.2d 338 (R.I. 1981); nor may the trial court assess the weight or the credibility of the evidence. *Doyle v. State*, 411 A.2d 907 (R.I. 1980). In reviewing a motion for summary judgment, a court is obliged to view the facts in a light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor. *Fennell v. First Step Designs, Ltd*., 83 F.3d 526, 534 (1st Cir. 1996); *National Credit Union Admin. Bd. v. Regine*, 795 F.Supp. 59, 62 (D.R.I. 1992). At the summary judgment stage, a court should ask itself whether the plaintiff could prevail if a jury or judge believed the plaintiff's version of the facts and disbelieved the defendant's version. *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 929 (1st Cir. 1983). Accordingly, summary judgment will not lie if the dispute about a material fact is "genuine," that is, the evidence is such that a reasonable jury could return a verdict for the non-moving party when construing all evidence

in the record and inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 247, 248 (1986).

### B. The Plaintiffs' Claims Against Defendants for Declaratory and Injunctive Relief Are Not Barred

Defendants claim that the Plaintiffs cannot maintain claims against Defendant State and the individual Defendants in their official capacities for either declaratory relief or money damages. The Plaintiffs agree with Defendants with regard to official capacity §1983 claims where a party is seeking money damages and §1983 claims against a state for money damages. However, the Plaintiffs have also made §1983 claims against the Defendants in their official capacity where they have sought declaratory and injunctive relief. These claims are viable. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 89-90 (1989)(citing *Papasan v. Allain*, 478 U.S. 265, 282 (1968); *Quern v. Jordan*, 440 U.S. 332, 337 (1979); *Milliken v. Bradley*, 433 U.S. 267, 289 (1977)).

### C. Because Genuine Issues of Material Fact Exist Relative to the Existence of Constitutional Violations, Defendants' Motion Should Be Denied

Defendants dedicate considerable time concentrating on purported infirmities relative to the Plaintiffs' constitutional claims against Defendant Chabot in his individual capacity. (Def. Memo. at p. 15-36). Defendants' lengthy argument as to the individual capacity claims, when boiled-down, relies on the alleged existence of reasonable suspicion and on qualified immunity. This reliance is wholly misplaced.[1]

#### 1. Defendant Chabot lacked reasonable suspicion to contact ICE, to question the Plaintiffs regarding their immigration status, and for transporting the Plaintiffs to ICE's office[2]

[1] Defendants' reliance on the videotape of the stop is equally misplaced. *See* Defendants' Memorandum in Support of Summary Judgment ("Def. Memo.") at p. 2. The videotape, is incomplete. *See* Chabot's depo. at p. 36, lines 14-15.

[2] Defendants have also moved for summary judgment relative to Defendant Chabot's *Terry* pat downs of Plaintiff Tamup by making the incredible claim that they "fell within the reasonable scope of investigative detention." Def. Memo at p. 20. Defendants also claim that the pat downs were lawful because Defendant Chabot was concerned for his physical safety and suspected that Plaintiff Tamup may be armed. Def. Memo. at pp. 35-36. For the sake of brevity and to avoid duplication, the Plaintiffs incorporate herein their argument set forth in §IV(A) of Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment. In their

First, Defendants allege that Defendant Chabot had reasonable suspicion to inquire about the Plaintiffs' immigration status.[3] To support this assertion, Defendants claim that Defendant Chabot's "suspicion" of the Plaintiffs' illegal immigration status "progressed" during the motor vehicle stop. *See* Def. Memo. at p. 25. A routine traffic stop is governed by the principles developed for investigative detentions set forth in *Terry v. Ohio,* 392 U.S. 1 (1968). To determine the reasonableness of investigative detention, courts must make a dual inquiry, asking first "whether the officer's action was justified at its inception," and second "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Bradford,* 429 F.3d 1149, 1156 (10th Cir. 2005) (*quoting Terry v. Ohio*, 392 U.S. at 20). In the present case, the Plaintiffs are not challenging the validity of the initial traffic stop. Rather, the Plaintiffs argue that Defendant Chabot unlawfully prolonged the traffic stop well beyond the scope of the justification of the stop, and, thus, violated their Fourth Amendment rights

During the course of a routine traffic stop, "a trooper may request a driver's license, vehicle registration and other required papers, run necessary computer checks, and then issue any warning or citation." *United States v. Gregoire*, 425 F.3d 872, 879 (10th Cir. 2005); *U.S. v. Edgerton*, 438 F.3d 1043, 1049 (10th Cir. 2006). "Once those tasks are completed, a driver must be allowed to proceed on his way unless reasonable suspicion exists that the driver is engaged in criminal activity or the driver consents to additional questioning." *Gregoire*, 425 F.3d at 879; *Edgerton*, 438 F.3d at 1047 ("[O]nce the purpose of the stop is satisfied and the underlying reasonable suspicion dispelled, the driver's detention generally must end without undue delay"). Furthermore, any additional

Memorandum, Plaintiffs address the unlawful pat downs of Plaintiff Tamup.

[3] Defendants have stated in their Memorandum that Defendant Chabot acted properly, pursuant to §1983, by conducting the initial stop of Plaintiffs' van for a traffic violation, by requesting Plaintiff Tamup's license and registration, and by requesting identification from the passenger Plaintiffs. The Plaintiffs do not dispute these assertions.

inquiry unrelated to the purpose of the initial traffic stop (i.e., immigration status) must be supported by reasonable suspicion if the inquiry prolongs the stop. *U.S. v. Alcaraz-Arellano*, 441 F.3d 1252, 1258 (10th Cir. 2006)(*citing Muehler v. Mena*, 544 U.S. 93, 125 (2005)). In other words, in order to establish that a defendant officer's additional questioning was lawful, the defendant must establish that the inquiry did not prolong the traffic stop and that, even if a "prolongation of the stop" occurred, it was supported by reasonable suspicion. *Alacaraz-Arellano*, 441 F.3d at 1261. In the present case, material factual issues exist relative to whether Defendant Chabot's actions prolonged[4] the traffic stop by (1) contacting the Office of Immigration and Customs Enforcement ("ICE") and, (2) questioning the Plaintiffs about their citizenship status and whether such actions were supported by reasonable suspicion.

Defendant Chabot's action in contacting ICE prolonged the stop and was not supported by reasonable suspicion.[5] It is undisputed that after Defendant Chabot pulled the Plaintiff's vehicle to the side of the road, he approached the van, gathered Plaintiff Tamup's license and the vehicle's registration, and then returned to his police cruiser. Complaint at ¶¶23, 25-26; Answer at ¶23; Chabot depo. at p. 12, lines 13-15; p. 14, lines 2-9; p. 16, lines 1-3. Defendant Chabot then conducted a criminal check of Plaintiff Tamup and checked the status of his operator's license. Complaint at ¶¶26 and 27; Answer at ¶27; Chabot depo. at p. 25, lines 1-8. The results of the criminal check were negative and Plaintiff Tamup's license was valid. Complaint at ¶27; Answer at ¶27; Chabot depo. p. 25, lines 9-10. While in the police cruiser, Defendant Chabot also contacted ICE and reported that he had pulled over a passenger van possibly containing illegal immigrants.

[4] Defendants attempt to establish that the duration the stop was prolonged was "reasonable." Def. Memo. at pp. 27; 30-32. However, whether the length of time the stop was prolonged was reasonable is not part of the analysis. This court must only determine if the stop was prolonged, and, if so, whether it was supported by reasonable suspicion. *See Alacaraz-Arellano*, 441 F.3d at 1258-59.

[5] Defendants have used the occasion of the filing of their motion for summary judgment for the disclosure of the Affidavit of Deportation Officer Cort Burke, dated May 20, 2008. With the filing of this Memorandum, the Plaintiffs will also be filing a motion to strike Mr. Burke's affidavit pursuant to Fed.R.Civ.P. 37(c)(1).

Chabot depo. at p. 26, lines 3-15; p. 27, lines 9-16. At this point, the traffic stop became "prolonged." Defendant Chabot's contact with ICE unreasonably expanded the duration of the stop. He had already conducted the license and criminal checks and determined that both checks were negative. Accordingly, Defendant Chabot could only lawfully prolong the Plaintiffs' detention and contact ICE, if he possessed "reasonable suspicion" of criminal activity. *See U.S. v. Soriano-Jarquin*, 492 F.3d 495, 501 (4th Cir. 2007).[6] He did not. Defendant Chabot contacted ICE without any "reasonable suspicion" that the Plaintiff passengers were illegal aliens. In fact, the only information available to Defendant Chabot at the time he contacted ICE was that the Plaintiffs were Hispanic, could not speak English clearly, were traveling to work and many of them did not have forms of identification.[7] Objectively speaking, those facts alone do not amount to a "reasonable suspicion" and permit an officer to inquire about the citizenship status of an individual. Furthermore, Defendant Chabot himself could not articulate any particularized reason to justify contacting ICE. *Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000)(to satisfy the requirement of the Fourth Amendment, the stopping officer must be able to "articulate more than an 'inchoate and unparticularized suspicion or hunch'"). In fact, Defendant Chabot admitted his sole reason for contacting ICE was because he "was acting on a hunch." Chabot depo. at p. 28, lines 11-12.

Defendant Chabot's questioning of the Plaintiffs regarding their citizenship prolonged the duration of the original stop and was not supported by "reasonable suspicion." At the time Defendant Chabot questioned the Plaintiffs about their immigration status, he had received Plaintiff

[6] In *Soriano-Jarquin*, a state police officer pulled over a vehicle for motor vehicle infractions. During the traffic stop, the driver of the vehicle indicated to the officer that the passengers were illegal immigrants. The officer then contacted ICE, which asked him to hold the vehicle for an administrative immigration inquiry. The court held that the contact with ICE did not extend the stop or "alter its unlawful character" insofar as the "contact [with ICE] came only after the driver of the van indicated that the passengers were illegal aliens." *Soriano-Jarquin*, 492 F.3d at 501 (emphasis added). In this case, Defendant Chabot contacted ICE without any admission from the Plaintiffs relative to their citizenship status or any other particularized suspicion.

[7] Defendants also claim that because the Plaintiffs were allegedly "nervous" and the "sheer number of individuals traveling to work in a non-commercial vehicle" contributed to reasonable suspicion. Def. Memo. at p.

Tamup's license and the vehicle's registration and completed necessary computer checks.[8] As such, the original purpose of the traffic stop was complete.[9] *See Gregoire*, 425 F.3d at 879. Nonetheless, Defendant Chabot returned to the van and requested identification from the Plaintiff passengers. Because three (3) of the Plaintiff passengers were able to produce forms of identification, Defendants assert that Defendant Chabot was permitted to question the Plaintiffs regarding their immigration status.[10] This claim is flawed. Defendant Chabot did not possess reasonable suspicion to inquire about the Plaintiffs' immigration status. At the time he made his inquiry, the only information he possessed was that the Plaintiffs were Hispanic, were traveling to work, could not speak English clearly, and that many of them did not have forms of identification. These facts, without more, do not amount to a particularized and objective basis for suspecting that the Plaintiffs were illegal aliens.[11] *Terry*, 392 U.S. at 27; *see U.S. v. Sandoval-Espana*, 459 F.Supp.2d 121, 131 (D.R.I. 2006).

---

30.

[8] The sequence of events surrounding the traffic stop, particularly when Defendant Chabot requested identification from the Plaintiff passengers and inquired about their immigration status is in dispute. For example, Defendant Chabot and some of the Plaintiffs testified that he made such requests and inquiries <u>prior</u> to returning to his cruiser the first time and conducting the computer checks. Chabot depo. at pp. 22-25; Astrid Cabrera depo. at pp. 17-18. However, a few Plaintiffs testified at their depositions that Defendant Chabot gathered Plaintiff Tamup's license and returned to his cruiser and did not ask for the Plaintiff passengers identifications until he returned. Munoz depo. at pp. 16-17; Vicenzio depo. at p. 26; Aquino depo. at p. 11. This is another example of a material fact being in dispute.

[9] Insofar as the original purpose of the stop was complete, any subsequent questions are deemed to prolong the stop. *See Alcaraz-Arellano*, 441 F.3d at 1261 (questioning by police officer after return of operator's license "prolonged" stop); *See also Gregoire*, 425 F.3d at 879.

[10] Defendants assert that Defendant Chabot was permitted to ask the Plaintiff passengers questions about their identities after several of the passengers could not produce identification documents. See *U.S. v. Sowers*, 136 F.3d 24, 27 (1st Cir. 1998); *U.S. v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004). However, Defendants assertion relies upon case law which allows such follow-up questioning on account that passengers may present a risk to the safety of the police officer. *Id*. In this case, Defendant Chabot clearly was not asking questions about the Plaintiff passengers' identities to protect his safety. If so, Defendant Chabot would have made such an inquiry during his <u>initial</u> visit to the passenger van.

[11] Defendants claim that Defendant Chabot had reasonable suspicion to detain the Plaintiffs because three (3) of the Plaintiffs (Astrid Cabrera, Noriega, and Tamup) admitted that they did not have green cards. Def. Memo. at pp. 8; 26; 28-29; 31. These alleged admissions, however, occurred in response to questioning about their immigration status, which, as shown above, was unlawful. Furthermore, the admission occurred <u>after</u> Defendant Chabot contacted ICE and inquired about the Plaintiffs' immigration status. Therefore, the admissions cannot be used as part of the "totality of the circumstances" in determining whether Defendant Chabot's actions were justifiable. Likewise, the admissions by these three (3) Plaintiffs was used by Defendant Chabot to generate

Lastly, Defendant Chabot's continued detention of the Plaintiffs and his subsequent escorting of the Plaintiffs to the ICE office in Providence, Rhode Island was unlawful.[12] As stated above, insofar as Defendant Chabot did not possess reasonable suspicion to contact ICE or question the Plaintiffs about their immigration status, he certainly cannot utilize information gathered from those unlawful acts to support his actions in further detaining, and, ultimately seizing the Plaintiffs. *Maritinez v. Nygaard*, 831 F.2d 822, 827 (9th Cir. 1987)(holding that agents violated Fourth Amendment by detaining individual during worksite raid because "to detain a worker short of arrest, an INS officer must have an objectively reasonable suspicion that the particular alien is an illegal alien.") Nevertheless, Defendant Chabot detained the Plaintiffs, and then conducted questioning to justify the detention. *U.S. v. Manzo-Jurado*, 457 F.3d 928, 934 (9th Cir. 2006)("Fourth Amendment requires that, before officers conduct an investigatory stop of an individual, they must have reasonable suspicion"); *LaDuke v. Nelson*, 762 F.3d 1318, 1327 (9th Cir. 1985)(holding that must have articulable suspicion of both alienage and unlawful presence before stop).

**2. Plaintiffs' constitutional claims are not barred by qualified immunity.**

Defendants aver that Defendant Chabot is entitled to qualified immunity relative to Plaintiffs' constitutional claims and therefore is entitled to summary judgment.

The First Circuit has established a three (3) pronged qualified immunity analysis: first, the court must determine "whether the facts alleged, taken in the light most favorable to the plaintiff, amount to a violation of a constitutional right." *Whitfield v. Melendez-Rivera*, 431 F.3d 1, 6 (1st Cir. 2005)(citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Second, the court must "ask whether

---

generalized suspicion of all of the Plaintiffs; however reasonable suspicion must be specific to an individual, and cannot arise from generalized suspicion of a large group of people. *See, e.g., Ybarra v. Illinois*, 444 U.S. 85, 91-93 (1979).

[12] The fact that Defendant Chabot and another officer escorted the Plaintiffs to ICE in Providence, calls into

that constitutional right was clearly established at the time of the alleged violation." *Id.* Third, the court must decide "whether a reasonable officer, similarly situated, would understand that his or her conduct violated that clearly established right." *Id.*

In the present case, Defendants have conceded that the Plaintiffs have met the first prong of the qualified immunity analysis by properly alleging a constitutional violation.

As to the second prong, Defendants take the position that Plaintiffs' right not to be unlawfully searched and seized was not clearly established at the time of the incident.[13] The Plaintiffs disagree. On July 11, 2006, these rights were well-established and known and understood by Defendant Chabot. At the time of incident, First Circuit and Supreme Court case law was clear that a police officer could not prolong a valid *Terry* stop without additional reasonable suspicion to do so or conduct a *Terry* pat down without actual suspicion of possession of a weapon before the execution of the pat down. *Terry,* 392 U.S. at 16, 21; *United States v. Taylor*, 162 F.3d 12, 17 (1st Cir.1998); S*ee also U.S. v. Sandoval-Espana*, 459 F.Supp.2d at 131; *U.S. v. Lott*, 870 F.2d 778, 784 (1st Cir. 1989).[14]

As to the third prong of the qualified immunity test, the Plaintiffs submit that material factual issues exist as to whether a reasonable officer would have understood that the factual circumstances surrounding this incident would not have justified the *Terry* pat downs of Plaintiff

---

question Defendants' claim that the Plaintiffs "voluntarily" traveled to ICE. Def. Memo. at p. 11, fn. 7.

[13] The Plaintiffs maintain that by failing to adhere to well-established practices relative to possessing reasonable suspicion prior to detaining an individual or conducting a *Terry* pat down, Defendant Chabot caused the unlawful seizure of all the Plaintiffs and the unlawful search of Plaintiff Tamup.

[14] The Supreme Court has held that, in the "obvious case," generalized holdings of law alone will provide sufficient notice to a police officer that what he/she is doing violates an established right. *Brosseau v. Hagen*, 543 U.S. 194 (2004); *Hope v. Pelzer*, 536 U.S. 730, 741 (2002))(quoting *Anderson v. Creighton*, 483 U.S. 635, 640, (1987)("[G]eneral statements of the law are not inherently incapable of giving fair and clear warning [to police officers], and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful'"); see *United States v. Lanier*, 520 U.S. 259 (1997). In *Lanier*, the Supreme Court expressly rejected a requirement that previous cases be "fundamentally similar" to demonstrate that the law is clearly established. In fact, the *Lanier* Court stated that although earlier cases involving "fundamentally similar" facts can provide especially strong

Tamup or have determined that reasonable suspicion existed to effectuate the seizure of the Plaintiffs. The Plaintiffs also maintain that these disputed material facts could lead a jury to find that a reasonable officer would not have prolonged Plaintiffs' detention by contacting ICE or would have questioned the Plaintiffs relative to their immigration status.

Based on the foregoing, Defendants' contention that Defendant Chabot is entitled to qualified immunity from Plaintiffs' constitutional claims is meritless and their motion as to Plaintiffs' constitutional claims should be denied.[15]

**D. <u>Plaintiffs Have Alleged Facts Sufficient to Establish a 42 U.S.C. §1981 Claim</u>**

Defendants also claim that there is no factual issue related to Plaintiffs' claims under 42 U.S.C. §1981 due to the absence of evidence that the actions and/or omissions of the Defendants were racially motivated. To support this contention, Defendants assert that Defendant Chabot was justified in requesting identification from the Plaintiffs and conducting pat downs of Plaintiff Tamup.

§1981(a) provides, in part, that all persons have the right to "full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens," and to "like punishment, pains, and penalties … of every kind and to no other." It is well-established that a "misuse of government power motivated by racial animus comes squarely" within the "equal benefit" and "like punishment" clauses of §1981. *Alexis v. McDonald's Restaurants of Mass., Inc.*, 67 F.3d 341 (1st Cir. 1995).

---

support for a conclusion that the law is clearly established, they are not necessary to such a finding. *Lanier*, 520 U.S. 261; <u>see also</u> *Hope*, 536 U.S. at 741.

[15] As an alternative argument, Defendants claim that, even if Defendant Chabot lacked reasonable suspicion to detain the Plaintiffs, Defendant Chabot is still protected by qualified immunity because he relied on the request of ICE to detain the Plaintiffs. This argument lacks merit. As stated elsewhere, Defendant Chabot's contact with ICE and questioning of the Plaintiffs concerning their immigration status were not justified because these were *post hoc* measures by Defendant Chabot to legitimize the seizure of the Plaintiffs.

In support of their argument as to the §1981 claim, Defendants assert that Defendant Chabot was justified in requesting identification from the Plaintiffs and conducting *Terry* pat downs of Plaintiff Tamup. Defendants, however, fail to address whether Defendant Chabot's acts of contacting ICE or questioning the Plaintiffs regarding their immigration status were racially motivated. This is because factual allegations exist which could support a reasonable inference that Defendant Chabot's actions were motivated by racial animus and in violation of the "equal benefit" and "like punishment" clauses of §1981.

In casting doubt on the Plaintiffs' §1981 claims, Defendants also argue that the Plaintiffs have not established that Defendant Chabot "does not request identification from non-Hispanic passengers in similar circumstances." This argument also lacks footing.[16]

In *United States v. Mesa-Roche*, 288 F.Supp.2d 1171 (D. Kansas 2003), after the defendant moved to obtain discovery on an equal protection claim of selective enforcement of traffic laws, the court held that in the context of a challenged traffic stop, "imposing the similarly situated requirement makes the selective enforcement claim <u>impossible</u> to prove." *Id.* at 1186 (emphasis added). In reaching this conclusion, the court addresses the difficulty of establishing "without discovery" that a similarly situated individual was not stopped. *Id.* It also addresses that even with discovery, the task is a tall order. Oftentimes pertinent data does not exist and the imposition on law enforcement agencies to gather and maintain such data each and every time a stop is made is impractical. *Id.* at 1187. For these reasons, the court concluded that "because law enforcement agencies do not make or keep records on individuals they do not stop, and certainly not on 'similarly situated' individuals they do not stop, imposing such a requirement [on anyone] who challenges a traffic stop as selective enforcement, effectively denies them any ability to discover or

[16] As discussed below, the Plaintiffs have not brought a equal protection claim. Plaintiffs' §1981 claim, simply put, is that the actions of the officers were motivated by racial animus.

prove such a claim. *Id.* The court goes on to hold that statistical evidence can be sufficient to establish the discriminatory effect of selective enforcement. This alone is not enough. Discriminatory intent must also be established. This requires a showing that the law enforcement official "acted with discriminatory purpose specific to [plaintiff's] own case and must support an inference that racial considerations played a part in his treatment." *Id.* at 1192. This analysis is required to establish a selective enforcement claim in the equal protection context.

In the present case, the Plaintiffs, as Defendants correctly noted, do not claim that incidents at issue give rise to an equal protection claim. Rather, the Plaintiffs maintain that Defendant Chabot's actions and/or omissions were motivated by race and that this gives rise to §1981 claims. It is irrefutable that Defendant Chabot contacted ICE and questioned the Plaintiffs about their immigration status because he identified them as Hispanics. Accordingly, a reasonable fact-finder could find that this supports an inference that race motivated the Plaintiffs prolonged seizure.

Finally, Defendants aver that since reasonable suspicion supported the seizure of the Plaintiffs and the pat downs of Plaintiff Tamup, the §1981 claim should be dismissed. For the reasons discussed above, the Plaintiffs maintain that Defendant Chabot did not possess the requisite reasonable suspicion for the seizure of the Plaintiffs or for the *Terry* pat downs of Plaintiff Tamup. Therefore, as previously stated, a jury could conclude that Defendant Chabot's actions were motivated by racial animus.

Accordingly, Defendants' Motion should be denied.

### E. Plaintiffs Have Alleged Facts Sufficient to Establish Liability Under State Law and Common Law

Defendants aver that due to "the existence of reasonable suspicion and the application of qualified immunity" Plaintiffs' state law claims found in Count One (negligence), Count Five (RI State Constitution-racial discrimination), Count Six (RI State Constitution-unreasonable search and

seizure), and Count VII (racial profiling) of the Complaint should be summarily dismissed. For the reasons discussed below, Defendants' Motion should be denied.

**1. State Constitution**

Relying on *Folan v. State*, 723 A.2d 287 (R.I. 1999), Defendants claim that the Plaintiffs cannot assert a State constitutional claim because they have brought a §1983 claim under the Fourth Amendment. Defendants have misconstrued *Folan*.

In *Folan*, the issue before the Rhode Island Supreme Court was whether the exclusivity clause in the Workers' Compensation Act ("WCA"), R.I.G.L. §28-29-1, *et seq.*, precluded an individual from bringing workplace discrimination claims. The Court held that the exclusivity clause in the WCA did not bar an independent action for discrimination. *Folan*, 723 A.2d at 291.

*Folan* does not bar the filing of §1983 and State constitution claims and therefore Defendants' Motion should be denied as to Counts Five and Six.[17]

**2. Racial Profiling**

The Plaintiffs have addressed above the contentions as to racial discrimination and submits for the reasons discussed herein that Defendants' Motion must be denied as to Counts Five and Seven.

**3. Negligence**

Defendants aver that there is no evidence to support claims of negligence as to training and supervision and *respondeat superior*. Defendants also aver that the claim must fail because the actions of Defendant Chabot were supported by reasonable suspicion and due to the application of qualified immunity.

---

[17] There is no bar, as there is under federal law, from the Plaintiffs seeking damages against the State for violations of his rights under the State Constitution. *Jones v. State*, 724 F.Supp. 25, 35 (D.R.I. 1989).

The evidence as to training and supervision and the proper manner in which to effectuate a lawful search and seizure is ample and has been previously addressed in §IV(C) of Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Partial Summary Judgment.

With respect to *respondeat superior,* the Rhode Island Supreme Court has made it clear that "an employer…can be held liable for an employees intentional tort committed against a third party only if the misconduct falls within the scope of employment." *Cruz v. Town of North Providence*, 833 A.2d 1237, 1240 (R.I. 2003). The Court has also held that an employer can be held liable for the negligent actions of an employee. *Saunders v. State*, 446 A.2d 748 (R.I. 1982). The Plaintiffs maintain that material factual issues exist as to *respondeat superior*.

The Plaintiffs have addressed above the contentions as to qualified immunity.

Based on the foregoing, the Plaintiffs submit that Defendants' Motion must be denied as to Count One.

### F. The Plaintiffs Have Alleged Sufficient Facts Establishing Causation

Defendants' claim that their acts are not the proximate cause of the Plaintiffs' injuries is meritless. As a matter of law, Defendants cannot claim that their actions did not deprive the Plaintiffs of their civil rights or caused their unlawful search and seizure. Thus, Defendants' Motion must be denied.

## V. Conclusion

**WHEREFORE,** for the foregoing reasons, the Plaintiffs respectfully pray that Defendants' Motion for Summary Judgment be denied.

Plaintiffs,
By their Attorneys,

/s/ V. Edward Formisano
V. Edward Formisano (#5512)
American Civil Liberties Union,
Rhode Island Affiliate
Sinapi, Formisano & Co., Ltd.
100 Midway Place, Suite 1
Cranston, RI 02920-5707
(401) 944-9690
(401) 943-9040 (facsimile)

**CERTIFICATION**

TO: James R. Lee, Assistant Attorney General
Brenda D. Baum, Assistant Attorney General
John M. Moreira, Special Assistant Attorney General
Department of Attorney General
150 South Main Street
Providence, RI 02903

I hereby certify that the within document has been electronically filed with the Court on this 30th day of June, 2008 and is available for viewing and downloading from the ECF system and was sent by electronic mail to the above-referenced.

/s/ V. Edward Formisano